# NO ORAL ARGUMENT PRESENTLY SCHEDULED
## No. 17-1089
_____

### IN THE
### United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

SANTA FE DISCOUNT CRUISE PARKING, INC. D/B/A EZ CRUISE PARKING AND SYLVIA ROBLEDO D/B/A 81ST DOLPHIN PARKING,
*Petitioners,*

v.

FEDERAL MARITIME COMMISSION AND UNITED STATES OF AMERICA,
*Respondents,*

BOARD OF TRUSTEES OF THE GALVESTON WHARVES AND GALVESTON PORT FACILITIES CORPORATION,
*Intervenors.*
_____

### ON PETITION FOR REVIEW OF AN ORDER OF THE FEDERAL MARITIME COMMISSION

_____

## BRIEF FOR THE RESPONDENTS, FEDERAL MARITIME COMMISSION AND UNITED STATES OF AMERICA

_____

ANDREW C. FINCH
 *Acting Assistant Attorney General*
JAMES J. FREDRICKS
ROBERT J. WIGGERS
  *Attorneys*

DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 PENNSYLVANIA AVENUE, N.W.
WASHINGTON, DC 20530
PHONE: (202) 514-2460

TYLER J. WOOD,
 *General Counsel*
WILLIAM H. SHAKELY,
 *Deputy General Counsel*
DANIEL S. LEE,
  *Attorney-Advisor*

FEDERAL MARITIME COMMISSION
OFFICE OF THE GENERAL COUNSEL
800 N. CAPITOL ST. NW
WASHINGTON, DC 20573
PHONE: (202) 523-5740

i

## CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES:

### Parties

The parties to the proceeding before the Federal Maritime Commission ("FMC" or "Commission") were Santa Fe Discount Cruise Parking, Inc. d/b/a EZ Cruise Parking ("EZ Cruise"); Lighthouse Parking Inc.;[1] and Sylvia Robledo d/b/a 81st Dolphin Parking ("Dolphin Parking"), as Complainants, with the Board of Trustees of the Galveston Wharves and the Galveston Port Facilities Corporation, as Respondents.

The parties to this appeal are EZ Cruise and Dolphin Parking, as Petitioners, with the Commission and the United States of America, as Respondents, and the Board of Trustees of the Galveston Wharves and the Galveston Port Facilities Corporation, as Intervenors.

### Rulings Under Review

The ruling under review is the Commission's "Order Affirming Initial Decision's Dismissal of Complaint," issued on January 13, 2017.

### Related Cases

Complainants in the Commission proceeding filed a complaint in the United States District Court for the Southern District of Texas seeking declaratory and

---

[1] Lighthouse Parking Inc. is not a party to the proceeding before this court.

ii

injunctive relief. *Santa Fe Discount Cruise Parking, Inc. et al. v. The Board of Trustees of the Galveston Wharves et al.*, Case No. 3:14-cv-00206 (S.D. Tex.). That proceeding is stayed.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES …......... ii

TABLE OF CONTENTS...........................................................................iv

TABLE OF AUTHORITIES ......................................................................v

GLOSSARY AND NOTE ON CITATIONS ......................................... vii

INTRODUCTION ....................................................................................1

STATEMENT OF JURISDICTION..........................................................3

STATEMENT OF THE ISSUES PRESENTED ........................................3

RELEVANT STATUTORY AND REGULATORY PROVISIONS .......................3

STATEMENT OF THE CASE...................................................................5

   I.  The Port imposed access fees on all ground transportation companies............5

   II.  The Parking Providers negotiated a fee regime that suited their business model....................................................................................................7

   III. The Parking Providers challenged their fee regime as a violation of § 41106(2) after the Port raised access fees.......................................................9

SUMMARY OF ARGUMENT ...............................................................10

ARGUMENT ..........................................................................................12

   I.  Standard of review. ................................................................................12

   II.  The Parking Providers failed to raise their injury arguments before the Commission and have thus waived them.......................................................13

   III. The Commission correctly determined that the Parking Providers failed to show injury...........................................................................................19

      A.  A Complainant must always show injury to prove a § 41106(2) claim...19

      B.  The Commission correctly applied the appropriate test for injury in determining that Parking Providers failed to establish injury.................25

   IV. The Commission fully addressed the Parking Providers' claims that they were injured by the Port's fee scheme. .................................................................26

CONCLUSION ......................................................................................30

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION .....31

CERTIFICATE OF SERVICE ................................................................32

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bartholdi Cable Co. v. FCC*, 114 F.3d 274 (D.C. Cir. 1997)………..….…….……… 14

*Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837 (1984) …....…… 12, 13

*City of Arlington v. Fed. Commc'n Comm'n*, 569 U.S. 290 (2013) ...........…….. 12

*Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607 (1966) …………….........………. 12

*Environmentel, LLC v. FCC*, 661 F.3d 80 (D.C. Cir. 2011)………. …..….……… 15

*Fox v. Clinton*, 684 F.3d 67 (D.C. Cir. 2012) ……………….…….........….. 12, 13

*Judulang v. Holder*, 565 U.S. 42 (2011) ……...……………………..…..........… 12

*NTCH, Inc. v. FCC,* 841 F.3d 497 (D.C. Cir. 2016)………………..….….……… 15

*Nueva Esperanza, Inc. v. FCC*, 863 F.3d 854 (D.C. Cir. 2017)………..….… 15, 17

*Otter Tail Power Co. v. Surface Transp. Bd.*, 484 F.3d 959 (8th Cir. 2007)......... 18

*Petchem, Inc. v. Fed. Mar. Comm'n*, 853 F.2d 958 (D.C. Cir. 1988) …...........… 12

*Sims v. Apfel*, 530 U.S. 103 (2000)………………………………..….….……. 15

*United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33 (1952)…………………………………………………..… 14, 15, 17, 18, 19

*Vt. Dep't of Pub. Serv. v. United States*, 684 F.3d 149 (D.C. Cir. 2012)……14, 19

*Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council*, 435 U.S. 519 (1978)………………………………………………………..…..14, 15, 18

*Whitman v. Am. Trucking Ass'ns,* 531 U.S. 457 (2001) ……………..........….. 13

*Woodford v. Ngo*, 548 U.S. 81 (2006)…………………………..........….……. 15

## FEDERAL STATUTES

5 U.S.C. § 706(2) ………………………………………………………… 12

28 U.S.C. § 2342….. ………………………….……………….……………….. 3

28 U.S.C. § 2343 …………………………………………….…………….. 3

28 U.S.C. § 2344 ………………………………….…………….……………. 3

46 U.S.C. § 41106(2) ………………................ 3, 4, 5, 11, 16, 19, 20, 21, 25, 26

46 U.S.C. § 41301… ……………………………………………….…………….. 3

46 U.S.C. § 41305(b) ………………………………………….…………….. 4, 20

## FEDERAL REGULATIONS

46 C.F.R. § 502.227……………………………………...…………….. 4, 14, 19

46 C.F.R. § 502.261(A)………..……………………………...…………… 4, 5, 18

## FEDERAL MARITIME COMMISSION ORDERS

* *Ceres Marine Terminal, Inc. v. Maryland Port Admin. (Ceres I)*, 27 S.R.R. 1251, 1280 (FMC 1997) ………………………………………..… 20, 21, 22, 23, 25

*Ceres Marine Terminals, Inc. v. Maryland Port Admin. (Ceres II)*,
    29 S.R.R. 356 (FMC 2001)………………………………………… 24, 27

*Valley Evaporating Co. v. Grace Line., Inc.*, 11 S.R.R. 873 (FMC 1970) ….. 22, 29

* Denotes authorities on which we chiefly rely.

## GLOSSARY AND NOTE ON CITATIONS

Commission opinions and orders are published in the Pike & Fischer

Shipping Regulation Report (Bloomberg BNA), which the Commission

abbreviates as "S.R.R."

### Abbreviations and Acronyms

| | |
|---|---|
| **ALJ** | Administrative Law Judge |
| **App.** | Petitioners' Appendix |
| **Commission** | Federal Maritime Commission |
| **FMC** | Federal Maritime Commission |
| **MTO** | Marine Terminal Operator |
| **Note C** | Tariff Circular No. 6, Note C |
| **Note D** | Tariff Circular No. 6, Note D |
| **Parking Providers** | Petitioners Santa Fe Discount Cruise Parking d/b/a EZ Cruise Parking and Sylvia Robledo d/b/a 81st Dolphin Parking |
| **Port** | Board of Trustees of the Galveston Wharves and Galveston Port Facilities Corp. |
| **R. Add**. | Respondents' Addendum |
| **S.R.R.** | Pike & Fischer Shipping Regulation Report |
| **Supp. App.** | Supplemental Appendix filed by Respondents |
| **Tariff** | Tariff Circular No. 6, Naming Rules and Regulations Governing Dockage, Shed Hire, and Other Services and |

vii

Charges Applying at the Facilities of the Galveston Wharves

**Terminal**          Cruise ship terminal facilities on Galveston Island

# INTRODUCTION

In 2004, the Board of Trustees of the Galveston Wharves ("the Port") adopted a tariff that imposed access fees on ground transportation companies whose vehicles enter the Galveston cruise terminal ("Terminal"). The fee amount varied depending on the type of vehicle entering the Terminal. Petitioners ("Parking Providers") operate off-port parking lots and primarily transport their customers to the Terminal via shuttle bus. Under the Port's original tariff, the Parking Providers' shuttle buses were subject to a $10 access fee each time a bus entered the Terminal. They challenged the per-trip access fee as unworkable for their business and eventually negotiated a different fee regime under which they were charged based on the number of parking spaces they maintained for customer use and were not charged per shuttle bus trip. Other companies continued operating under the original fee regime and paid an access fee in the form of a per-trip charge or a decal renewed annually depending on the type of vehicle(s) entering the Terminal.

The Parking Providers operated under their negotiated per space fee regime for almost eight years without apparent complaint. When the Port raised the fees imposed on ground transportation companies under both fee regimes in May 2014, the Parking Providers filed a complaint for adjudication with the Commission

alleging that the Port's operation of the two regimes violated the Shipping Act's prohibition against unreasonable preferences.

The Commission rejected the Parking Providers' claim, finding that the Providers had failed to prove that they were harmed by the Port's having subjected them to the per-spot fee regime they demanded. The Parking Providers petitioned this Court for review of the Commission's order and argue that the Commission erroneously required them to prove that they were injured by the application of the two regimes, misapplied the test for injury, and failed to address their arguments.

The Court should deny the petition. The Shipping Act and Commission case law, including the sole case on which the Parking Providers rely, require a complainant to show injury caused by unreasonably different treatment, that is, that the respondent gave someone else a *preference* or imposed on complainant a *prejudice*. The Commission correctly determined that the Parking Providers did not make this showing because they did not show that they paid more under their special fee regime than they would have paid if treated like any other ground transportation company. And the Commission addressed the claims that the Parking Providers articulated to the Commission.

2

## STATEMENT OF JURISDICTION

As noted by the Parking Providers, the Commission has subject-matter jurisdiction over their complaint under 46 U.S.C. § 41301, and, this Court has jurisdiction over this case under 28 U.S.C. §§ 2342-44.

## STATEMENT OF THE ISSUES PRESENTED

1.      Have the Parking Providers waived their arguments that the Commission erred in its injury analysis?

2.      Are complainants required to show that they sustained an injury proximately caused by an unreasonable prejudice or preference to prove an alleged violation of § 41106(2)?

3.      Was the Commission arbitrary or capricious in determining that the Parking Providers did not prove that they sustained an injury proximately caused by unreasonable prejudice or preference given that they did not show any financial harm from operating under the per space fee regime that they negotiated?

4.      Did the Commission fully address the Parking Providers' claim that they sustained an injury proximately caused by the per space fee regime?

## RELEVANT STATUTORY AND REGULATORY PROVISIONS

Section 41106(2) of title 46 of the U.S. Code provides that marine terminal operators may not:

3

(2) give any undue or unreasonable preference or advantage or impose any undue or unreasonable prejudice or disadvantage with respect to any person.

Section 41305(b) of title 46 of the U.S. Code addresses reparations awards, and provides:

(b) Basic amount. If the complaint was filed within the period specified in section 41301(a) of this title [46 U.S.C. § 41301(a)], the Federal Maritime Commission shall direct the payment of reparations to the complainant for actual injury caused by a violation of this part [46 U.S.C. §§ 40101 *et seq.*].

Sections 502.227(a)(1) and (4) of title 46 of the Code of Federal Regulations addresses exceptions to decisions or orders of dismissal by an ALJ, the Commission's review of decisions or orders of dismissal and judicial review. It provides:

(a)(1) Within twenty-two (22) days after date of service of the initial decision, unless a shorter period is fixed under §502.103, any party may file a memorandum excepting to any conclusions, findings, or statements contained in such decision, and a brief in support of such memorandum. Such exceptions and brief . . . shall indicate with particularity alleged errors, shall indicate transcript page and exhibit number when referring to the record . . .

(4) A decision or order of dismissal by an administrative law judge shall only be considered final for purposes of judicial review if the party has first sought review by the Commission pursuant to this section.

Sections 502.261(a) of title 46 of the Code of Federal Regulations addresses petitions for reconsideration before the Commission. It provides:

4

(a) Within thirty (30) days after issuance of a final decision or order by the Commission, any party may file a petition for reconsideration . . . A petition will be subject to summary rejection unless it:

(1) Specifies that there has been a change in material fact or in applicable law, which change has occurred after issuance of the decision or order;

(2) Identifies a substantive error in material fact contained in the decision or order; or

(3) Addresses a finding, conclusion or other matter upon which the party has not previously had the opportunity to comment or which was not addressed in the briefs or arguments of any party. Petitions which merely elaborate upon or repeat arguments made prior to the decision or order will not be received. A petition shall be verified if verification of the original pleading is required and shall not operate as a stay of any rule or order of the Commission.

## STATEMENT OF THE CASE

## I.    <u>The Port imposed access fees on all ground transportation companies.</u>

The Port, which is a marine terminal operator within the meaning of § 41106(2), operates a cruise ship terminal complex located on Galveston Island, Texas. App. 11. The Parking Providers operate parking facilities located a few blocks from the Terminal that cater to cruise line passengers by providing them off-port parking and shuttle bus transportation to and from the Terminal. *Id*. at 12.

In January 2005, the Port began charging an access fee for commercial passenger vehicles entering the Terminal. *Id*. at 15. The fee scheme was imposed as Note C under Tariff Circular No. 6, Naming Rules and Regulations Governing Dockage, Shed Hire, and Other Services and Charges Applying at the Facilities of

5

the Galveston Wharves ("Tariff"). *Id*. at 12-14. Originally, access fees were determined solely by vehicle type. *Id*. at 14-15. Under Note C of the Tariff, all "ground transportation companies" were required to purchase a port use permit ($250) that was renewable annually at a cost of $50. *Id*. at 14. In addition to the permit fee, ground transportation companies paid a decal or access charge determined solely by the type of vehicle entering the Terminal. *Id.* at 14-15. The chart below lists the fees assessed depending on vehicle type.

| Type of Vehicle[2] | Decal and Access Charge |
|---|---|
| Bus, Charter Bus, Commercial Passenger Vehicle, Courtesy Vehicle, Shuttle or Bus | $10.00 Per Trip |
| Limousines | $10.00 Annual Decal Per vehicle |
| Taxi and Taxicabs | $7.50 Annual Decal Per Vehicle |

The Parking Providers relied almost exclusively on shuttle buses to transport their customers to and from the Terminal. App. at 12. Operating under Note C, they would have paid $10 for every trip their shuttle buses made to the Terminal (in addition to purchasing the annual permit). *Id*. at 14.

---

[2] This chart summarizes the fee scheme set forth in Note C but was reformatted and in some cases, rephrased, for clarity and ease of reference. *See* App. 14-15 for the original formatting and phrasing.

## II.    <u>The Parking Providers negotiated a fee regime that suited their business model.</u>

The Parking Providers challenged the Note C fee scheme imposing per-trip access fees as incompatible with their business model. *Id*. at 15. They argued that paying for access on a per-trip basis made it impossible to determine accurately what they would owe and budget accordingly. *Id*. They also raised concerns about customer relations, fearing that decreasing the number of shuttle bus trips to defray access costs would disappoint customers expecting prompt transport to the Terminal. *Id*.

After extended negotiations, the Port agreed to the Parking Providers' request that unlike the other ground transportation companies, they would pay for Terminal access based on the number of parking spaces available to their customers. App. at 15-16. Under the separate schedule applicable to the Parking Providers and other "off port parking users," all parking lot providers would pay $8.00 per parking space each month in return for unlimited access to the Terminal and no per-trip access fees for their shuttle buses. *Id*. at 16.

7

The new, distinct fee schedule applicable to Parking Providers was reflected in Note D of the Tariff.[3] *Id*. All other ground transportation companies would continue to pay under the original Note C fee regime.[4] *See id*. at 14-15.

The Port applied the Parking Provider fee regime retroactively to the date it began collecting the fees (January 2005). *Id*. at 16-17. Because they successfully negotiated this change, Parking Providers never paid per-trip fees under the original fee scheme. *Id.* at 15-16. For the period from January 2005 to August 2006, all three complainants in the Commission proceeding, including the Parking Providers, paid less under their negotiated flat rate scheme than they would have paid if charged per trip.[5] *Id*. at 16.

For the next eight years, the Parking Providers operated under their separate fee regime without any further protest. *Id*. at 17. The Port periodically adjusted the

---

[3] Under Note D, off-port parking users would pay: "a monthly Access Fee equal to the amount of $8.00 per parking space located in the Off-Port Parking User's parking facility, with number of billable parking spaces to be confirmed by the Galveston Wharves." App. 16.

[4] Under Note D, off-port parking users would pay: "a monthly Access Fee equal to the amount of $8.00 per parking space located in the Off-Port Parking User's parking facility, with number of billable parking spaces to be confirmed by the Galveston Wharves." App. 16.

[5] Under the per space fee scheme, Dolphin Parking saved $13,910, Lighthouse saved $5,110.00 and EZ Cruise saved $52,250 in access fees (as compared to what they owed if charged per trip from January 2005 through September 2006). App. 16. Lighthouse did not join in the petition for review filed in this Court.

number of spaces used to calculate the fee to coincide with the spaces the Parking Providers operated.

### III.  The Parking Providers challenged their fee regime as a violation of § 41106(2) after the Port raised access fees.

In May 2014, the Port increased the Terminal access fees applicable to all ground transportation companies. App. 17. It retained the two distinct fee regimes applicable to "ground transportation companies" and "off-port parking users" imposed under Notes C and D respectively, but modified the rates. *Id*. at 17-19.[6] The fee increase was scheduled to take effect on July 1, 2014. *Id.* at 17. Before the rate increase took effect, the Parking Providers filed their complaint with the Commission naming the Port as the respondent. *Id*. Shortly thereafter, the Port retroactively rescinded the rate increase applicable to the Parking Providers and simultaneously abolished their separate fee regime (Note D). *Id*. at 21. Effective October 1, 2014, the Parking Providers began operating under Note C, the same as other ground transportation companies, and their fees are determined by the type of vehicle they use to transport their customers to the Terminal. *Id*. at 21; *see also id.* at 17-18.

---

[6] In particular, the Port proposed raising the per-spot fee for the Parking Providers from $8.00 per parking space to $28.88 per parking space. App. 18.

9

## SUMMARY OF ARGUMENT

The Commission's conclusion that the Parking Providers failed to prove that the Port violated the Shipping Act is supported by substantial evidence and is neither arbitrary and capricious nor contrary to law. The Commission found that although the Port had treated the Parking Providers differently than other ground transportation companies by charging them access fees under the Note D per-spot fee regime, the Parking Providers failed to establish that they had been injured by this treatment. The Commission compared the amounts the Port charged the Parking Providers under the per-spot regime with the amounts they would have paid under the Note C vehicle-type regime for the period in which data for both was available and determined that the Parking Providers paid less under the per-spot regime, and they were thus not injured by it.

Rather than challenging the evidence and the Commission's factual findings, the Parking Providers have shifted arguments drastically and now assert new arguments not raised before the Commission. In particular, the Parking Providers now argue that they were not required to show injury and, even if they were, that the Commission failed to address their arguments on the appropriate method for determining injury. Because the Commission was not given an opportunity to address these issues, the Parking Providers have waived them.

In addition to being waived, these arguments are substantially flawed. The Parking Providers initially contend that, as a matter of law, the Commission erred in requiring that they show injury. But Commission case law makes clear that all § 41106(2) claims require a showing of injury. In cases like this one in which no competitive relationship is required, the test for injury is whether the complainant would have been better off but for the different treatment, i.e., would the Parking Providers have been better off if they had been subjected to the Note C vehicle-type regime rather than the Note D per-spot regime. The Commission applied this test and determined that because the Parking Providers primarily used shuttle buses to transport cruise passengers to and from the Terminal, the Parking Providers had failed to establish that they would have paid less under the Note C regime, under which they would have been charged a per-trip fee.

The Parking Providers further assert that the Commission did not address arguments focused on the rates applied to taxicabs and limousines under the Note C regime. But those rates are irrelevant to the injury analysis because the Parking Providers did not use limousines or taxicabs and those rates would not have applied to them even if they were subject to the Note C regime. The Commission also expressly addressed the limousine and taxicab argument raised in the Parking Providers' exceptions to the Commission, in which they asserted that the inconsistent collection of the fees for companies using taxicabs and limousines

11

caused the Parking Providers to subsidize those other companies. The Commission determined that the Parking Providers had failed to establish how they were subsidizing other users, i.e., they failed to show how the Port's alleged selective enforcement against other ground transportation companies affected the rates paid by the Parking Providers.

## ARGUMENT

## I.    Standard of review.

The Administrative Procedure Act grants a reviewing court authority to set aside agency action, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (2)(E); *see Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619 (1966); *Petchem, Inc. v. Fed. Mar. Comm'n*, 853 F.2d 958, 962 (D.C. Cir. 1988). Put another way, the court reviews only "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* (quoting *Judulang v. Holder*, 565 U.S. 42, 52 (2011)) (internal quotation marks omitted).

Review by a court of an agency's interpretation of the statute it administers is governed by *Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837 (1984). *See City of Arlington v. Fed. Commc'n Comm'n*, 569 U.S. 290, ___, 133 S. Ct. 1863, 1868, 185 L. Ed. 2d 941, 950 (2013); *Fox v. Clinton*, 684 F.3d 67, 75 (D.C.

12

Cir. 2012).  *Chevron* requires a court conducting a review of an agency's

interpretation to engage in a familiar two-step test. *See Fox*, 684 F.3d at 76.  First,

a court must address whether Congress has spoken to the precise issue; if Congress

has, the inquiry ends there. *Chevron*, 467 U.S. at 842–43.  If, however, the statute

is "silent or ambiguous," then the court must defer to the administering agency's

construction of the statute so long as it is reasonable. *Whitman v. Am. Trucking

Ass'ns,* 531 U.S. 457, 481 (2001) (quoting *Chevron*, 467 U.S. at 844) (internal

quotation marks omitted).

## II.    __The Parking Providers failed to raise their injury arguments before the Commission and have thus waived them.__

The Parking Providers argue that the Commission committed reversible

error in determining that they failed to prove injury proximately caused by the

Port's fee scheme. As support for that argument, they now assert that the difference

in access rates alone under the Port's Tariff was "sufficient to establish" injury.

Pet'rs Br. 20. Relatedly, they also argue that the Commission did not address their

arguments that the ALJ erred in the analysis of whether the Parking Providers had

established injury by not comparing the amounts assessed to the Parking Providers

with amounts assessed to other ground transportation companies that used other

vehicles, e.g., taxicabs and limousines. *Id*. at 21-22. Contrary to their assertion,

however, the Parking Providers did not raise these arguments to the Commission in

13

their exceptions to the ALJ's decision and have thus waived them. *See* Supp. App. 55-88.

Parties waive the right to seek judicial review of any issue they failed to raise before the administrative agency at the appropriate time. *United States v. L.A. Tucker Truck Lines, Inc*. 344 U.S. 33, 36-37 (1952). To preserve their arguments for appeal, longstanding precedent and the Commission's regulations[7] require petitioners to timely and "forcefully present[]" their arguments to the agency. *Vt. Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 554, 98 S. Ct. 1197, 55 L. Ed. 2d 460 (1978); *see also Tucker Truck*, 344 U.S. at 35-37. If petitioners can bring their claims before the full Commission, that is a necessary precursor to judicial review. *Vt. Dep't of Pub. Serv. v. United States*, 684 F.3d 149, 156 (D.C. Cir. 2012) (seeking judicial review requires petitioners to "exhaust their administrative remedies"). Issues that petitioners fail to raise before the full Commission are "unexhausted," and the appellate court can decline to

---

[7] The Commission's regulations required parties to identify with particularity any alleged errors in an ALJ's initial decision in exceptions filed with the Commission. 46 C.F.R. § 502.227(a)(1). And the regulations provide that a decision by an ALJ "shall only be considered final for purposes of judicial review if the party has first sought review by the Commission pursuant to this section." 46 C.F.R. § 502.227(a)(4). Arguments later raised on appeal have to first be raised before the Commission. *See, e.g., Bartholdi Cable Co. v. FCC*, 114 F.3d 274, 279 (D.C. Cir. 1997) ("'Commission' itself . . . must be afforded the opportunity to pass on the issue").

exercise jurisdiction on that ground. *Id.; see also Environmentel, LLC v. FCC*, 661 F.3d 80, 83-84 (D.C. Cir. 2011).

These requirements are not merely procedural or formulaic. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). They ensure that agencies have the opportunity to consider and coherently address alleged errors before they are "haled into federal court" to defend their decision. *Id.* at 89; *Tucker Truck*, 344 U.S. at 37 (requiring parties to raise their issues before the agency ensures orderly procedure and good administration). These obligations also ensure that litigants will have a reasonable opportunity to proffer relevant evidence. *Sims v. Apfel*, 530 U.S. 103, 109 (2000).

Petitioners must clearly assert the issues they claim are in contention. *See Vt. Yankee,* 435 U.S. at 554. The agency is not responsible for divining their intent based on "cryptic" or "obscure reference[s]" as to what "ought to be" or might be considered as error. *Id*. Rather, arguments have to be forthright and fairly stated so the agency can reasonably understand what they contend is reversible error and the bases for making those claims. *See id.; see also Nueva Esperanza, Inc. v. FCC*, 863 F.3d 854, 860-61 (D.C. Cir. 2017) (noting that waiver depends on "whether a reasonable Commission *necessarily* would have seen the question raised before [the court] as part of the case presented to it" (quoting *NTCH, Inc. v. FCC*, 841 F.3d 497, 508 (D.C. Cir. 2016)).

The Parking Providers' exceptions were responding to the ALJ's Initial Decision. The ALJ unequivocally found that the Parking Providers could not prevail under § 41106(2) without proving injury (which the ALJ equated to financial harm) and that they had failed to establish injury. Supp. App. 43-51. The ALJ based the latter determination on multiple findings and a detailed comparison of the rates that the Parking Providers paid as contrasted with the amounts they would have paid for their shuttle buses under the per-trip fee regime. *Id.* at 23-25.

Despite the ALJ's clear findings on these elements critical to their claim, the Parking Providers did not allege any specific error in the ALJ's findings on their failure to prove injury. Critically, the Parking Providers' only reference to the ALJ's findings on injury was a bare bones summary of their legal contention that their "injury" from the Port's conduct was "twofold." Supp. App. 66. They did not describe the nature of this alleged injury or supporting evidence or state where or how the ALJ allegedly went astray in concluding they suffered no harm or financial loss or disadvantage. *See id*. Their assertion is simply a circular contention that they suffered "actual injury" because the Port "grant[ed] other ground transportation companies and 'Off-Port-Parking Users' undue and unreasonable preference and advantage." *Id*. That is it.

That statement did not alert the Commission to what the Parking Providers contended proved their claim of harm or how the ALJ may have erred in finding

against them. *Id*. Their second contention was phrased in the same conclusory

terms and simply restated their general contention that the Port's "conduct spanned

many years," caused the Parking Providers' fees to increase, and resulted in their

subsidizing other users' Terminal access. *Id.* Beyond these conclusory legal

contentions—they offered nothing in the way of identifying any specific error by

the ALJ or pointing to evidence that allegedly proved their claim of injury. *See id.*

The argument that the Parking Providers now put forward finds scant

support in the exceptions filed before the Commission. Nothing stated in the

Parking Providers' conclusory argument can reasonably be construed as placing

the Commission on notice that they were in fact contending that they need not

prove injury at all or that they had sufficiently proven injury in any event by

pointing to the different rates paid by other Port users--the arguments they now

claim as grounds for reversal. Compare Pet'rs Br. 20 and Supp. App. 66.

The Commission did not have the benefit of any specific identification of

errors allegedly made by the ALJ or evidence supporting a result contrary to the

ALJ's finding of no injury. The waiver standards preclude the Parking Providers

from belatedly raising issues that they failed to present, support, or clearly

articulate to the Commission. *See Tucker Truck*, 34 U.S. at 36 (noting that courts

should not overturn administrative decisions unless there is evidence of error

supported by objections timely under the agency's rules); *Nueva Esperanza*, 863

17

F.3d at 860-61 (D.C. Cir. 2017) (arguments that the petitioner failed to raise with "sufficient clarity" before the FCC were forfeited); *Otter Tail Power Co. v. Surface Transportation Board*, 484 F.3d 959, 963 (8th Cir. 2007) ("fatally late" claim barred from appellate review).

Moreover, the Parking Providers' failure to articulate their present arguments to the Commission is not excused by their inability to predict the Commission's determination that they were not required to show that they were in a competitive relationship with or were similarly situated to other Port users. The Parking Providers could have, but did not, petition for reconsideration under 46 C.F.R. § 502.261(a). Recognized grounds for seeking reconsideration include addressing "a finding, conclusion or other matter upon which the party has not previously had the opportunity to comment or which was not addressed in the briefs or arguments of any party." *Id.* Had the Parking Providers requested reconsideration before filing this appeal, they would have given the Commission the opportunity to review and rule on those new arguments—the decisional structure outlined in *Tucker Truck* and *Vt. Yankee*.

In sum, the Parking Providers' injury-related arguments raised on appeal bear little resemblance to the arguments asserted in their exceptions. Compare Pet'rs Br. 21-22 and Supp. App. 66. Even a cursory review of the exceptions shows that they did not "forcefully present" to the Commission the arguments they

18

now present to the Court. In bypassing the Commission, they negated its ability to review and address their contentions before absorbing this Court's resources and seeking judicial review and likewise deprived the Port of the opportunity to fully address those arguments. On that basis, the Court should declare the arguments waived.[8] *See Tucker Truck*, 344 U.S. at 37 ("Simple fairness" requires the courts to refrain from "toppl[ing] over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.")

## III.  **The Commission correctly determined that the Parking Providers failed to show injury.**

### A.  A Complainant must always show injury to prove a § 41106(2) claim**.**

As discussed above, to succeed on a § 41106(2) claim, a complainant must show that the conduct at issue proximately caused injury to it; the mere existence of different treatment, even if unreasonable, is insufficient. Further, the Shipping Act requires a complainant to show injury in order to receive reparations. 46

---

[8] The Parking Providers have also waived their request for a cease and desist order that would bar the Port's continuing enforcement of the fee scheme it adopted in September 2014. *See* Pet'rs Br. 26. The Parking Providers specifically sought cease-and-desist relief against ongoing violations before the ALJ, and the ALJ rejected it. Supp. App. 52-53. But the Parking Providers did not reassert these ongoing violation and cease-and-desist arguments in their exceptions to the Commission. *Id.* at 55-58. Having failed to exhaust their administrative remedies, the Parking Providers have waived their arguments about ongoing violations. *Vt. Dep't of Pub. Serv*, 684 F.3d at 156-160; *see also* 46 C.F.R. § 502.227(a)(1), (4).

U.S.C. § 41305(b). The Parking Providers initially appear to recognize that a showing of injury is one of the four elements necessary for a § 41106(2) claim under the *Ceres I* decision, acknowledging that such claims involve demonstrating: (1) in certain cases, that the complainant and another person or entity are similarly situated or in a competitive relationship; (2) the respondent treated the complainant and the other person differently; (3) the different treatment is not justified by differences in valid transportation factors; and (4) the different treatment is the proximate cause of injury to the complainant. *See Ceres Marine Terminal, Inc. v. Maryland Port Administration* (*Ceres I*), 27 S.R.R. 1251, 1270 (FMC 1997) (citation omitted). The Parking Providers also agree with the burden-shifting framework applicable to such claims and employed by the Commission in this instance. *See* Pet'rs Br. 15-16. In cases in which the first *Ceres I* element does not apply, complainants have the initial "'burden of proving that [they were] subjected to different treatment and [were] injured,' at which point the burden of production shifts to [r]espondents to 'justify[] the difference in treatment.'" *Id.* at 24 (quoting *Ceres I*, 1251 S.R.R. at 1271).

From this point onward, however, the Parking Providers stray off course, arguing incorrectly that because they were not required to prove the first *Ceres I* element, and that the only "injury" they needed to establish was that the Port subjected them to a different fee regime than other ground transportation

20

companies. *See id.* at 20, 24. In other words, according to the Parking Providers, where no competitive relationship needs to be shown, proving the second *Ceres I* element establishes the fourth. *See id.* The Parking Providers insist that the Commission erred by requiring them to prove actual injury, or in their terms, "actual damages." *See id.* at 20, 25.

As discussed above, the principal defect with these arguments is that they were not raised before the Commission, and they appear for the first time in the Parking Providers' brief. *See id.*; Supp. App. 66. But they are meritless in any event. The Parking Providers' argument that their initial burden was satisfied by establishing different treatment, without the need to show that such different treatment resulted in injury, is wholly inconsistent with the statutory language and Commission case law. Section 41106(2) does not prohibit undue or unreasonable differences in treatment; rather, the provision prohibits "undue or unreasonable *preference[s]* or *advantage[s]*" and "undue or unreasonable *prejudice[s]* or *disadvantage[s]*." 46 U.S.C. § 41106(2). Inherent in this statutory language is that not only must the complainant have been unreasonably treated differently than another, but that the different treatment must amount to a preference or advantage for another or a prejudice or disadvantage for the complainant. In other words, the different treatment must have rendered the complainant comparably *worse off*, and to demonstrate this, the Commission has interpreted this ambiguous statutory

21

phrase to require the complainants to establish that the different treatment proximately caused some injury. *Ceres I*, 1251 S.R.R. at 1271 [R. Add.-40]. The Parking Providers appear to admit as much in their brief, stating that in cases like this the "injury (and measure of legal damages) is established by showing that a *preferential* rate should have been made available, but a higher rate was assessed and paid." Pet'rs Br. 10-11 (emphasis added). This case in particular demonstrates the need for a showing of injury – the Parking Providers are complaining about different treatment in the form of a fee regime that they asked for, presumably because it would benefit them.

Despite their concession, the Parking Providers effectively dispense with the injury requirement, and conflate *Ceres I* elements two and four, by misconstruing dicta from a single footnote in *Ceres I.* This footnote does not state that no showing of injury is required in cases in which it is unnecessary to prove a competitive relationship. *See id.* at 20. Instead, the footnote states that "an *additional* showing of injury is not required" beyond prejudicial rates charged to complainant. *Ceres I*, 1251 S.R.R. at 1271 n. 48 [R. Add-40] (emphasis added) (citing *Valley Evaporating Co. v. Grace Line., Inc.*, 11 S.R.R. 873, 882-83 (FMC 1970) [R. Add. 56-57]). In such cases, the injury (and the measure of legal damages) is the difference between the rate charged and collected and the rate that would have applied but for the different treatment. In contrast, in cases in which a

22

competitive relationship must be shown, something beyond a prejudicial rate must be shown because the existence and extent of injury is dependent on competitive factors and may be greater or lesser than the difference between relevant rates. *Id.* The adjective "additional" when describing injury conclusively rebuts any suggestion that no injury showing is required. And the Parking Providers invite the Court and Commission to presume that *any* difference in rates is prejudicial, without them needing to prove it, a presumption that is especially problematic where the comparison at issue is not simply between otherwise similar rates, but between two different fee regimes–one based on the number of parking spaces at a port user's facility and another based on the type of vehicles the user elects to employ. As shown by the Commission's analysis, the appropriate inquiry involves more than comparing the fee regimes on their face. It requires an analysis of how a complainant would fare under each regime.

Moreover, the Parking Providers' assertion is belied by the Commission's findings in *Ceres I* that follow footnote 48. Specifically, after determining that the different lease rates violated the Shipping Act, the Commission moved on to a number of additional claims regarding various differences in day-to-day operations. *Id.* at 1274 [R. Add.-043]. The Commission rejected these claims, however, on the grounds that the complainant (Ceres Marine Terminal) failed to establish that it suffered any injury as a result. *Id.* This refutes the suggestion that

23

*Ceres I* stands for the proposition that the mere existence of different treatment is sufficient, without showing injury, to make an unreasonable preference/prejudice claim. Instead, the Commission merely reiterated that the type of injury to be shown under § 41106(2) depends on whether a competitive relationship is required. *See, e.g.*, *Ceres Marine Terminals, Inc. v. Maryland Port Admin. (Ceres II)*, 29 S.R.R. 356, 372-373 (FMC 2001) [R. Add-17-18] (comparing the measures of injury in cases in which a competitive relationship must be shown and cases in which such a relationship is not necessary to establish a violation).

In addition to misinterpreting the *Ceres I* footnote, the Parking Providers attempt to muddy the issue by arguing that the Commission incorrectly required it to prove "actual damages." *See* Pet'rs Br. 20, 25. The phrase "actual damages," however, does not appear once in the Commission's decision, and the Parking Providers fail to cite any portion of the decision or provide other support for their assertion that the Commission required a showing of actual damages to establish injury. Instead, as explained in more detail below, the ALJ and the Commission examined the two different fee regimes, one for off-port parking users and one for all other ground transportation companies, and correctly determined that the Parking Providers failed to establish that they would have been better off under the fee regime for all other ground transportation companies. *See* Supp. App. 23-24, 37-52 and App. 31-35. Because the Parking Providers failed to establish injury, the

24

Commission correctly found that they failed to establish a violation under §

41106(2).

B.    The Commission correctly applied the appropriate test for injury in determining that Parking Providers failed to establish injury.

As *Ceres I* indicates, when no competitive relationship is required, the injury is prejudicial rates, and the Commission in its order correctly found that the Parking Providers could not show that the rates it received (and which it expressly bargained for) were prejudicial. After first finding that the Parking Providers were not required to show that they were similarly situated or in a competitive relationship with the other ground transportation companies, the Commission applied the test for injury in *Ceres I*, and analyzed whether the Parking Providers met their burden of proving that they would have been better off if they had been subject to the fee regime for all other ground transportation companies under the Note C regime and not the separate fee Note D regime applicable to them.

The Commission found that the Parking Providers failed to meet this burden. Because the Parking Providers relied primarily on shuttle buses to transport their customers, had they been operating under Note C, they would have paid the $10.00 per- trip fee. The Commission adopted the ALJ's detailed analysis and findings in concluding that the Parking Providers failed to prove that they would have paid less if they had been charged $10 per trip and not $8.00 per space. App. 33-35. The Parking Providers do not challenge this conclusion.

25

**IV.**   **The Commission fully addressed the Parking Providers' claims that they were injured by the Port's fee scheme.**

The Parking Providers instead claim that the Commission's injury analysis erroneously compared the rates they actually paid with only the rates they would have paid if treated like one class of ground transportation company, hotels, and failed to compare the rates they paid to the rates paid by other classes of ground transportation companies, those operating taxicabs and limousines. Pet'rs Br. 21-23.[9]

As discussed in detail above, the Parking Providers raised only vague and conclusory arguments regarding injury in their exceptions to the Commission. Nowhere in their exception to the ALJ's finding that they failed to establish injury did they argue that the proper test for injury was to compare the rates they paid with those paid by ground transportation companies that used other types of vehicles or that such a comparison would have shown injury and satisfied their burden under *Ceres I. See* Supp. App. 66, 70-71.

This newly raised argument fundamentally misconstrues the test for injury in § 41106(2) claims. The statute, and Commission case law interpreting it, do not require comparing the Parking Providers with every other entity assessed entry fees

---

[9] In making this assertion, the Parking Providers do not specify whether their argument applies to the fee scheme in effect before October 2014, the revised fee scheme in effect after October 2014, or potentially both. *See id.* at 24. Regardless of which argument they intend to raise, their argument sets up a false comparison.

26

under Note C. The test that the Commission has established is whether the complainant would have been better off but for the different treatment, i.e., would the Parking Providers have been better off if they had been subject to the Note C regime for other ground transportation companies and not the Note D regime. *See Ceres II*, 29 S.R.R. at 372-73 [R. Add-17-18]. That is the test the Commission applied in this case.

Any assessment of injury based on the Note C fee scheme has to be consistent with how fees were actually structured and determined for ground transportation companies under that regime.[10] Within that classification, fees were based on the type of vehicles entering the Terminal. The Parking Providers primarily used shuttle buses to transport their customers to and from the Terminal, and would have paid the shuttle bus rate under Note C. Under the original fee regime, shuttle buses were charged a fee of $10 per trip–the same rate charged for buses, charter buses, commercial passenger vehicles, and courtesy vehicles. Thus, the Commission compared the relevant access fees that were charged under the Note D regime and the fees that would have been charged under the Note C regime, i.e., the per-trip fees charged for shuttle buses, and determined that the

---

[10] There were only two classifications for businesses operating commercial passenger vehicles–ground transportation or off-port parking user. The rates for all off-port parking users were structured the same--they were charged per parking space.

27

record failed to support the Parking Providers' contention that they would have paid less under the Note C regime. Because the rates charged taxicabs and limousines were irrelevant in determining injury, the Commission correctly did not base its injury analysis on those rates.

The Parking Providers claim that the Commission should have also compared the rates they paid to the decal fees paid by taxicabs and limousines. This sets up a false comparison that ignores the vehicle-type designation that determined the fee paid by ground transportation companies covered by Note C.[11] Under Note C, all rates were based on the type of vehicles a ground transportation elected to use, not the nature of the operator's business. For example, if a hotel retained a limousine or a taxicab to transport its guests to the Terminal, the hotel would not be charged a per-trip fee for Terminal access.

The Parking Providers primarily operated shuttle buses–not taxicabs or limousines–so the access fees assessed on limousines and taxicabs are not relevant to establishing whether the Parking Providers would have been better off under the Note C regime. The Parking Providers cannot prove injury by comparing the fees they paid to rates they were not entitled to claim even if they were assessed fees under the Note C regime. The Parking Providers did not allege or prove that they

---

[11] Petitioners did not challenge the fee scheme's differential based on vehicle type but instead argued that the fee should not have been determined based on business type. *See* Supp. App. 60-66.

routinely used taxicabs or limousines to transport their passengers to and from the Terminal–the only circumstance that would have entitled them to the annual decal rate if they were subject to the Note C regime. Without demonstrating that was the case, they cannot use the taxicab and limousine rates to prove injury.

The Commission justifiably limited its comparison to the shuttle bus rates that would have applied if the Parking Providers were operating under the Note C regime and declined to consider the inapplicable rates for taxicabs and limousines as a valid measure of injury. This approach mirrors the approach in *Valley Evaporating*, the case cited in *Ceres I* footnote 48. *See Valley Evaporating*, 11 S.R.R. at 883[R. Add.-57] (measuring injury as the difference between the amount the complainant paid under the current, higher rate and the amount that would have been assessed under the applicable preexisting lower rate).

The Commission did address the vague selective enforcement argument that the Parking Providers' raised in their Exceptions. *See* Supp. App. 66; App. 35. The Parking Providers argued that they were injured by being forced to subsidize other users of the terminal. *Id*. The Commission noted that the Parking Providers' access fees stayed constant from 2006 to 2014, including during the time the Port allegedly selectively enforcement the fee regime against other users, and found that they failed to establish that they would have paid a lower rate but for the selective enforcement. App. 35. In other words, the Parking Providers failed to establish

29

how the payment of their access fees during the period of alleged selective

enforcement subsidized other port users, as the failure to collect fees appeared to

have no effect on the fees charged to the Parking Providers or vice versa.[12] *See id.*

## CONCLUSION

For the foregoing reasons, this Court should deny the petition for review.

Respectfully submitted,

/s/ Daniel S. Lee

| | |
|---|---|
| ANDREW C. FINCH | TYLER J. WOOD, |
| *Acting Assistant Attorney General* | *General Counsel* |
| JAMES J. FREDRICKS | WILLIAM H. SHAKELY, |
| ROBERT J. WIGGERS | *Deputy General Counsel* |
| *Attorneys* | DANIEL S. LEE, |
| | *Attorney-Advisor* |
| DEPARTMENT OF JUSTICE | FEDERAL MARITIME COMMISSION |
| Antitrust Division | Office of the General Counsel |
| 950 Pennsylvania Avenue, N.W. | 800 N. Capitol St. NW |
| Washington, DC 20530 | Washington, DC 20573 |

---

[12] The Parking Providers further assert that the Commission erred by not shifting the burden of production to the Port to show that its different treatment was justified by legitimate transportation factors. Pet'rs Br. at 24. There was no error by the Commission. The Commission did not discuss whether the Port's different treatment was justified because the Parking Providers' failure to demonstrate injury obviated the need for such an inquiry. Although the Court need not reach the issue because the Commission's decision should be upheld and the petition should be denied, whether the Port adequately justified its conduct, and other issues, like the statute of limitations, should be decided, if at all, by the Commission in the first instance.

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION**

I HEREBY CERTIFY that the foregoing brief complies with the type-volume limitation and type style requirements of Fed. R. App. P. 32 and contains 8,498 words, and was prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman font.

/s/ Daniel S. Lee

Tyler J. Wood, *General Counsel*
William H. Shakely,
  *Deputy General Counsel*
Daniel S. Lee, *Attorney-Advisor*
FEDERAL MARITIME COMMISSION
800 N. Capitol St., NW
Washington, D.C. 20573
Ph.: 202.523.5740

31

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed with the

Clerk of the Court on this 30th day of August 2017, using the CM/ECF system which

will send notification of such filing to the parties at the email addresses listed below:

Gerald A. Morrissey III
Winston & Strawn, LLP
1700 K Street NW, Washington, DC 20006
Email: gmorrissey@winston.com
*Counsel for Petitioners*

Anthony P. Brown
David E. Cowen
Jocelyn A. Holland
Mcleod, Alexander, Powel & Apffel, P.C.
802 Rosenberg, PO Box 629, Galveston, Texas 77553
Email: apbrown@mapalaw.com, decowen@mapalaw.com,
jaholland@mapalaw.com
*Counsel for Intervenors*

Robert Wiggers
James J. Fredricks
Department of Justice, Antitrust Division, Appellate Section
950 Pennsylvania Avenue, N.W., Room 3224, Washington, D.C. 20530
Email: robert.wiggers@usdoj.gov, james.fredricks@usdoj.gov
*Counsel for Respondent United States of America*

/s/ Daniel S. Lee
Tyler J. Wood, *General Counsel*
William H. Shakely, *Deputy GC*
Daniel S. Lee, *Attorney-Advisor*
FEDERAL MARITIME COMMISSION
800 N. Capitol St., NW
Washington, D.C. 20573
Ph.: 202.523.5740
